UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

_____

JOSEPH GUARNERI,

                          Plaintiff,

v.                                                          1:21-CV-0991
                                                            (TJM/ML)
SCHOHARIE COUNTY DEPARTMENT
OF SOCIAL SERVICE; COMMISSIONER
DONNA BECKER; ACTING COMMISSIONER
JULLIE SAMMON; WORKER MELISSA
GOODEARU; WORKER KAYLTHIN RUSSEL;
OFFICE OF TEMPORARY AND DISABILITY
ASSISTANCE; CASE WORKER LEANN BRADT,
of Rehabilitation Support; and GOVERNOR CUOMO,

                          Defendants.

_____

APPEARANCES:                                      OF COUNSEL:

JOSEPH GUARNERI
  Plaintiff, *Pro Se*
354 Edison Street
Schenectady, New York 12300

MIROSLAV LOVRIC, United States Magistrate Judge

### <u>ORDER and REPORT-RECOMMENDATION</u>

The Clerk has sent this *pro se* Complaint (Dkt. No. 1) together with an application to

proceed *in forma pauperis* (Dkt. No. 3) filed by Joseph Guarneri ("Plaintiff") to the Court for

review.  For the reasons discussed below, I grant Plaintiff's *in forma pauperis* application (Dkt.

No. 3), and I recommend that Plaintiff's Complaint (Dkt. No. 1) be dismissed in its entirety (1)

in part with leave to amend, and (2) in part without leave to amend.

## I.      BACKGROUND

Liberally construed,[1] Plaintiff's Complaint asserts that his civil rights were violated by Defendants Schoharie County Department of Social Service, Commissioner Donna Becker, Acting Commissioner Jullie Sammon, Worker Melissa Goodearu, Worker Kaylthin Russel, Office of Temporary and Disability Assistance, Case Worker Leann Bradt of Rehabilitation Support, and Governor Cuomo (collectively "Defendants").  (*See generally* Dkt. No. 1.)

Plaintiff alleges that at some point in time, he underwent a coronary angiograph and was cared for by Bassett Healthcare in Cooperstown.  (*Id.*)  Plaintiff alleges that he was discharged from Bassett Healthcare on April 29, 2019, with instructions that he take all medications with foods.  (*Id.*)  Plaintiff alleges that on May 8, 2019, the medical instructions—that he take all medications with food—was shown to Defendant Goodreau.  (*Id.*)  The Complaint alleges that at some point in time, Defendant Goodreau threatened and coerced Plaintiff to prevent him from taking life threatening medication with food.  (*Id.*)

Plaintiff alleges that he is a diabetic and, as such, requires a diet that includes carbohydrates and a snack at night.  (*Id.*)  Plaintiff alleges that on August 9, 2021, without any advance notice, Defendants stopped his Supplemental Nutrition Assistance Program ("SNAP") benefits.  (*Id.*)  Plaintiff alleges that his SNAP benefits were reduced from $194.00 per month, to $114.00 per month, to $189.00 per month.  (*Id.*)  Plaintiff alleges that his benefits were reduced intentionally to kill him.  (*Id.*)  In addition, Plaintiff alleges that Defendants "use" a homeless shelter that has been "called out by the state for poor" health and safety conditions.  (*Id.*)  Plaintiff alleges that Defendants "sent" him to "Riverside Motel with no medication or food." (*Id.*)

Plaintiff alleges that—on an unspecified date—he agreed, in writing, to repay Defendants $7,830.00—for an unspecified debt. (*Id*.) Plaintiff alleges that he paid Defendants $7,090.00, which, according to Plaintiff, was an overpayment. (*Id*.) Plaintiff alleges that he and Social Security were not informed by Defendants that Defendants "stole" the money and Plaintiff will not recover the money that he overpaid. (*Id*.)

Plaintiff alleges that he filed an action in Schoharie County Supreme Court against Defendant Sammon, which is still pending. (*Id*.)

Based upon the foregoing allegations, the Complaint appears to assert the following three claims: (1) a claim that Defendants violated Plaintiff's civil rights pursuant to 42 U.S.C. § 1983, (2) a claim that Defendants violated Plaintiff's rights under the Americans with Disabilities Act ("ADA"), and (3) a claim pursuant to New York state law of negligence. (*See generally* Dkt. No. 1.) Plaintiff requests a jury trial and seeks $500,000.00 in damages. (*Id*. at 4.)

Plaintiff also filed an application for leave to proceed *in forma pauperis*. (Dkt. No. 3.)

## II.   PLAINTIFF'S APPLICATION TO PROCEED *IN FORMA PAUPERIS*

When a civil action is commenced in a federal district court, the statutory filing fee, currently set at $402, must ordinarily be paid. 28 U.S.C. § 1914(a). A court is authorized, however, to permit a litigant to proceed *in forma pauperis* status if a party "is unable to pay" the standard fee for commencing an action. 28 U.S.C. § 1915(a)(1).[2] After reviewing Plaintiff's *in*

---

[1]   The court must interpret *pro se* complaints to raise the strongest arguments they suggest. *Soto v. Walker*, 44 F.3d 169, 173 (2d Cir. 1995) (quoting *Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir. 1994)).

[2]   The language of that section is ambiguous because it suggests an intent to limit availability of IFP status to prison inmates. *See* 28 U.S.C. § 1915(a)(1) (authorizing the commencement of an action without prepayment of fees "by a person who submits an affidavit that includes a statement of all assets such prisoner possesses"). The courts have construed that section, however, as making IFP status available to any litigant who can meet the governing

*forma pauperis* application (Dkt. No. 3), the Court finds that Plaintiff meets this standard.

Therefore, Plaintiff's application to proceed *in forma pauperis* is granted.[3]

## III.    LEGAL STANDARD FOR INITIAL REVIEW OF COMPLAINT

"Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that . . . the action . . . (i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief."  28 U.S.C. § 1915(e)(2).

In order to state a claim upon which relief can be granted, a complaint must contain, *inter alia*, "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  The requirement that a plaintiff "show" that he or she is entitled to relief means that a complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is *plausible* on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (emphasis added) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "Determining whether a complaint states a plausible claim for relief . . . requires the . . . court to draw on its judicial experience and common sense. . . . [W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged–but it has not shown–that the pleader is entitled to relief."  *Iqbal*, 556 U.S. at 679 (internal citation and punctuation omitted).

---

financial criteria.  *Hayes v. United States*, 71 Fed. Cl. 366, 367 (Fed. Cl. 2006); *Fridman v. City of N.Y.*, 195 F. Supp. 2d 534, 536 n.1 (S.D.N.Y. 2002).

[3]      Plaintiff is reminded that, although his application to proceed *in forma pauperis* has been granted, he will still be required to pay fees that he may incur in this action, including copying and/or witness fees.

"In reviewing a complaint . . . the court must accept the material facts alleged in the complaint as true and construe all reasonable inferences in the plaintiff's favor." *Hernandez v. Coughlin*, 18 F.3d 133, 136 (2d Cir. 1994) (citation omitted).  However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions.  Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  *Iqbal*, 556 U.S. at 678.

Courts are "obligated to construe a pro se complaint liberally."  *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009); *see also Nance v. Kelly*, 912 F.2d 605, 606 (2d Cir. 1990) (per curiam) (reading the plaintiff's *pro se* complaint "broadly, as we must" and holding that the complaint sufficiently raised a cognizable claim).  "[E]xtreme caution should be exercised in ordering sua sponte dismissal of a pro se complaint before the adverse party has been served and [the] parties . . . have had an opportunity to respond."  *Anderson v. Coughlin*, 700 F.2d 37, 41 (2d Cir. 1983).

The Court, however, also has an overarching obligation to determine that a claim is not legally frivolous before permitting a *pro se* plaintiff's complaint to proceed.  *See, e.g., Fitzgerald v. First East Seventh St. Tenants Corp.*, 221 F.3d 362, 363 (2d Cir. 2000) (holding that a district court may *sua sponte* dismiss a frivolous complaint, notwithstanding the fact that the plaintiff paid the statutory filing fee).  "Legal frivolity . . . occurs where 'the claim is based on an indisputably meritless legal theory [such as] when either the claim lacks an arguable basis in law, or a dispositive defense clearly exists on the face of the complaint."  *Aguilar v. United States*, 99-MC-0304, 99-MC-0408, 1999 WL 1067841, at *2 (D. Conn. Nov. 8, 1999) (quoting *Livingston v. Adirondack Beverage Co.*, 141 F.3d 434, 437 (2d Cir. 1998)); *see also Neitzke v. Williams*, 490 U.S. 319, 325 (1989) ("[D]ismissal is proper only if the legal theory . . . or factual contentions lack an arguable basis."); *Pino v. Ryan*, 49 F.3d 51, 53 (2d Cir. 1995) ("[T]he

decision that a complaint is based on an indisputably meritless legal theory for purposes of dismissal under section 1915(d), may be based upon a defense that appears on the face of the complaint.").

## IV.   ANALYSIS

In addressing the sufficiency of a plaintiff's complaint, the court must construe his pleadings liberally. *Sealed Plaintiff v. Sealed Defendant*, 537 F.3d 185, 191 (2d Cir. 2008). Having reviewed Plaintiff's Complaint with this principle in mind, I recommend that all causes of action be dismissed.

### A.   Claims Pursuant to 42 U.S.C. § 1983

"To state a valid claim under § 1983, the plaintiff must allege that the challenged conduct (1) was attributable to a person acting under color of state law, and (2) deprived the plaintiff of a right, privilege, or immunity secured by the Constitution or laws of the United States." *Whalen v. Cnty. of Fulton*, 126 F.3d 400, 405 (2d Cir. 1997) (citing *Eagleston v. Guido*, 41 F.3d 865, 875-76 (2d Cir. 1994)). Thus, § 1983 does not create any independent substantive right, but rather "provides a civil claim for damages" to "redress . . . the deprivation of [federal] rights established elsewhere." *Thomas v. Roach*, 165 F.3d 137, 142 (2d Cir. 1999).

The Complaint fails to allege a deprivation of federal rights established elsewhere. (*See generally* Dkt. No. 1.) Instead, the Complaint states that it is brought pursuant to 42 U.S.C. § 1983 and that the Court has jurisdiction pursuant to 28 U.S.C. § 1331. (Dkt. No. 1 at 1.) The only other federal statute mentioned is the ADA, which provides an independent cause of action separate from § 1983.

In addition, and in the alternative, the Complaint is replete with allegations that shock but fails to allege actions attributable to state actors. State action is an essential element of any

section 1983 claim. *Gentile v. Republic Tobacco Co.*, 95-CV-1500, 1995 WL 743719, at *2

(N.D.N.Y. Dec. 6, 1995) (Pooler, J.) (citing *Velaire v. City of Schenectady*, 862 F. Supp. 774,

776 (N.D.N.Y. 1994) (McAvoy, J.)). To survive scrutiny under section 1915(e) where a plaintiff

has asserted a section 1983 claim, the complaint must allege facts that plausibly suggest state

action on the part of the named defendants. *See DeMatteis v. Eastman Kodak Co.*, 511 F.2d 306,

311 (2d Cir. 1975), *modified on other grounds by DeMatteis v. Eastman Kodak Co.*, 520 F.2d

409 (2d Cir. 1975), ("A private party violates [section] 1983 only to the extent its conduct

involves state action."); *see also Wilson v. King*, No. 08-CV-0509, 2008 WL 2096593, at *1

(N.D.N.Y. May 16, 2008) (Sharpe, J.).

### 1. Claims Against Defendants Office of Temporary and Disability Assistance and Governor Cuomo in his Official Capacity

The Eleventh Amendment provides that "[t]he Judicial power of the United States shall

not be construed to extend to any suit in law or equity, commenced or prosecuted against one of

the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State."

U.S. CONST. amend. XI. "The Eleventh Amendment bars federal courts from exercising

subject matter jurisdiction over claims against states absent their consent to such a suit or an

express statutory waiver of immunity." *Brokamp v. James*, 21-CV-0389, 2021 WL 5444277, at

*6 (N.D.N.Y. Nov. 22, 2021) (Hurd, J.) (citing *Brown v. New York*, 975 F. Supp. 2d 209, 221

(N.D.N.Y. 2013) (D'Agostino, J.)).

"New York has not waived its sovereign immunity for 42 U.S.C. § 1983 claims."

*Brokamp*, 2021 WL 5444277, at *6 (citing *Jones v. N.Y. Div. of Military and Naval Affairs*, 166

F.3d 45, 49 (2d Cir. 1999)). "Moreover, it is well-settled that states and their officials acting in

their official capacities are not 'persons' under § 1983 and, therefore, Eleventh Amendment

immunity is not abrogated by that statute." *Id*. (citing *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989)).

I recommend that, to the extent Plaintiff asserts a claim pursuant to 42 U.S.C. § 1983 against Defendant Office of Temporary and Disability Assistance, that claim be dismissed because it seeks monetary relief against a defendant that is immune from such relief.  42 U.S.C. § 1915(e)(2)(B)(iii); *see Clark v. United States*, 16-CV-0740, 2016 WL 10570930, at *8 (N.D.N.Y. Aug. 29, 2016) (Hummel, M.J.) (recommending dismissal with prejudice, claims under § 1983 against the defendant New York State Office of Temporary and Disability Assistance pursuant to the Eleventh Amendment bar that extends to agencies), *report and recommendation adopted by* 2016 WL 6610734 (N.D.N.Y. Nov. 9, 2016) (Sannes, J.)); *Roosevelt Council v. New York*, 08-CV-1158, 2008 WL 5243887, at *2 (N.D.N.Y. Dec. 15, 2008) (Kahn, J.) ("The law is well established that under the Eleventh Amendment to the United States Constitution, both the State of New York and its subdivisions are immune from [§1983] suits such as this.").

In addition, damages against state officials in their official capacities are essentially actions against the state and will be barred by the Eleventh Amendment unless (1) Congress has abrogated immunity; (2) the state has consented to suit; or (3) the *Ex parte Young* doctrine applies.  *Ex parte Young*, 209 U.S. 123 (1908); *Will*, 491 U.S. at 71; *In re Deposit Ins. Agency*, 482 F.3d 612, 617 (2d Cir. 2007).  The Eleventh Amendment bars actions against state officials sued in their official capacities where, as here, the state is a real party in interest.  *See Edelman v. Jordan*, 415 U.S. 651, 663, 669 (1974) (holding that suits against state employees in their official capacities are barred by the Eleventh Amendment); *Ward v. Thomas*, 207 F.3d 114, 119 (2d Cir. 2000) (rejecting federal suit against state officials under the Eleventh Amendment); *Farid v.*

*Smith*, 850 F.2d 917, 921 (2d Cir. 1988) ("The [E]leventh [A]mendment also bars suits against state officials and state agencies if the state is the real party in interest"); *Muhammad v. Rabinowitz*, 11-CV-2428, 2012 WL 1155098, at *6 (S.D.N.Y. Apr. 6, 2012) (dismissing claims for damages against state employees in their official capacity as being barred by the Eleventh Amendment); *Crockett v. Pataki*, 97-CV-3539, 1998 WL 614134, at *5 (S.D.N.Y. Sept. 14, 1998) (dismissing claims against governor and housing commissioner sued in their official capacities); *Sassower v. Mangano*, 927 F. Supp. 113, 121 (S.D.N.Y. 1996) (dismissing claims for damages against state officials sued in their official capacities).

Where claims are brought against an official in their official capacity, the state is considered the real party in interest, and therefore the same sovereign immunity principles apply as if the claim was brought directly against the state. *Spiteri v. Russo*, 12-CV-2780, 2013 WL 4806960, at *16 (E.D.N.Y. Sept. 7, 2013), *aff'd sub nom. Spiteri v. Camacho*, 622 F. App'x 9 (2d Cir. 2015); *see KM Enter., Inc. v. McDonald*, 518 F. App'x 12, 13-14 (2d Cir. 2013) (finding that a suit against a state agent in her official capacity effectively rendered the suit against the State of New York and was thus covered under sovereign immunity); *Gollomp v. Spitzer*, 568 F.3d 355, 369 (2d Cir. 2009) ("Eleventh Amendment sovereign immunity 'is not a mercurial area of law, but has been definitively settled by the Supreme Court since 1890 with respect to actions against the state itself, and 1945 with respect to actions against state agencies or state officials named in their official capacity.'" (quotation marks omitted)); *Huminski v. Corsones*, 386 F.3d 116, 133 (2d Cir. 2004) ("[S]tate officials cannot be sued in their official capacities for retrospective relief under [§] 1983."); *Anghel v. N.Y. Dep't of Health*, 12-CV-3484, 2013 WL 2338153, at *9 (E.D.N.Y. May 29, 2013) (quoting *Ying Jing Gan v. City of New York*, 996 F.2d 522, 529 (2d Cir. 1993)) ("A suit for damages against a state official in his or her official

capacity 'is deemed to be a suit against the state, and the official is entitled to invoke the Eleventh Amendment immunity belonging to the state.'"), *aff'd*, 589 F. App'x 28 (2d Cir. 2015); *Pietri v. New York Office Of Court Admin.*, 936 F. Supp. 2d 120, 128 (E.D.N.Y. 2013) ("The Eleventh Amendment also bars suits against state officials in their official capacities for money damages.").

Here, Plaintiff seeks solely monetary damages against Defendants.  (*See generally* Dkt. No. 1.)  As a result, I recommend that Plaintiff's claim pursuant to 42 U.S.C. § 1983 against Defendant Cuomo in his official capacity be dismissed as barred by the Eleventh Amendment.

## 2.     Claims Against Defendant Goodearu

The only allegation in the Complaint that relates to Defendant Goodearu is that she coerced and threatened Plaintiff, which resulted in him taking life threatening medication without food and that this occurred in the presence of Schoharie County Sheriff Deputy Woods and a person named Ashley.  (Dkt. No. 1 at 2.)  Although the Complaint alleges that all Defendants are sued in their individual and official capacities, it is not clear what, if any, position Defendant Goodearu holds.  Further, to the extent that Defendant Goodearu is employed by a state or municipal entity, the Complaint fails to allege facts plausibly suggesting that her actions coercing and threatening Plaintiff, which resulted in him taking life threatening medication without food, occurred in the context of her employment.[4]

---

[4]      The Court also notes that under the caption, the Complaint appears to include numbered paragraphs listing Plaintiff and his current address and Defendants with their addresses.  (Dkt. No. 1 at 1-2.)  In paragraph number 2, the Complaint names Defendant Becker but omits an address for her.  (*Id.* at 1.)  The Complaint then appears to jump to paragraph number 4, where it names Defendant Goodreau.  (*Id.*)  This apparent omission of paragraph number three and an address for Defendant Becker further compounds the ambiguity surrounding what, if any, position Defendant Goodreau holds and whether she was acting in her capacity as a state actor at the time of her alleged improper conduct.

As a result, I recommend that Plaintiff's claims against Defendant Goodearu pursuant to

42 U.S.C. § 1983, be dismissed for failure to state a claim.

### 3. Claims Against Defendants Becker, Sammon, Russel, Brandt, and Cuomo in their Individual Capacities

To the extent that Plaintiff attempts to assert claims pursuant to 42 U.S.C. § 1983, the

factual allegations in the Complaint do not plausibly suggest that Defendants Becker, Sammon,

Russel, Bradt, and Cuomo were personally involved in Plaintiff's alleged injuries.

The failure "to allege that a defendant was personally involved in, or responsible for, the

conduct complained of renders a complaint 'fatally defective on its face.'" *Linares v. Annuci*,

19-CV-11120, 2021 WL 2689736, at *6 (S.D.N.Y. June 30, 2021) (quoting *Alfaro Motors, Inc.

v. Ward*, 814 F.2d 883, 886 (2d Cir. 1987)).

Plaintiff's only allegation regarding Defendant Becker is that he mailed a letter addressed

to her on November 23, 2020, in which, Plaintiff told her to fix the issues he was having with his

monthly SNAP benefits.  (Dkt. No. 1 at 3.)  This conclusory and vague allegation fails to allege

facts plausibly suggesting Defendant Becker's involvement with a violation of Plaintiff's federal

rights.

In addition, aside from the caption and list of Defendants, the body of the Complaint does

not mention Defendants Sammon, Russel, Brandt, or Cuomo.  *See Crichlow v. Annucci*, 18-CV-

3222, 2021 WL 5234522, at *2 (S.D.N.Y. Nov. 10, 2021) (dismissing for failure to state a claim

upon which relief may be granted those claims against defendants who were identified in the

caption of the third amended complaint but, "the Court [wa]s unable to find reference to them

anywhere else in the pleading.");  *Joseph v. Annucci*, 18-CV-7197, 2020 WL 409744, at *4

(S.D.N.Y. Jan. 23, 2020) (dismissing claims against defendants that were "named in the caption

only" where "[t]he body of the Complaint does not contain any factual allegations naming them,

or indicating that they violated the law or injured Plaintiff in some manner."); *Manley v. Ramos*,

13-CV-2662, 2014 WL 1496094, at *2 (S.D.N.Y. Apr. 16, 2014) (dismissing claims where the

plaintiff "name[d police officers] as defendants in the caption, but . . . never mention[ed] them

again in the body of the complaint."); *Ortiz v. Bloomberg*, 10-CV-9434, 2011 WL 4822829, at

*3 (S.D.N.Y. Oct. 7, 2011) (dismissing claims where "the only named reference to [certain

correctional officers was] in the caption of the Complaint, and the only additional references to

these defendants [were] merely conclusory statements about their personal involvement and

liability."); *Purdie v. Mahoney*, 05-CV-0705, 2005 WL 3050969, at *1 (N.D.N.Y. Nov. 14,

2005) (Mordue, J.) ("Plaintiff is obligated to set forth allegations of personal involvement by

each named defendant in his complaint, and may not meet this obligation with conclusory

allegations.  Thus, plaintiff is advised that if he seeks to sue individuals who allegedly violated

his rights, he must name them in the caption of his complaint *and* set forth specific allegations of

wrongdoing as to each individual in the body of his complaint.")

As a result, I recommend that Plaintiff's claims pursuant to 42 U.S.C. § 1983 against

Defendants Becker, Sammon, Russel, Brandt, and Cuomo in their individual capacities be

dismissed for failure to state a claim.

> ### 4.      Claims Against Defendant Schoharie County Department of Social Services and Defendants Becker, Sammon, Russel, and Brandt in Their Official Capacities

A municipality may only be named as a defendant in certain circumstances.  In *Monell v.

Dep't of Soc. Servs.*, 436 U.S. 658 (1978), the Supreme Court outlined the limited circumstances

under which a municipality may be liable under Section 1983.  A municipality may not be held

liable solely because it employs a tortfeasor.  *Los Angeles Cnty., Cal. v. Humphries*, 562 U.S. 29,

36 (2010).  Only when the municipality, through the execution of its policies, actually deprives

an individual of his constitutional rights, is it liable for the injury.  *Monell*, 436 U.S. at 694.

To establish municipal liability, the policy must actually cause the violation of constitutional rights; it must be the moving force behind the violation. *Id.*; *Dominguez v. Beame*, 603 F.2d 337, 341 (2d Cir. 1979). Official policy includes the decisions of a government's lawmakers, the acts of policymaking officials, and practices that are so widespread as to "practically have the force of law." *Connick v. Thompson*, 563 U.S. 51, 61 (2011). Municipal liability may also be shown by establishing that a policymaking official ordered or ratified the employees' actions either expressly or tacitly.

Finally, municipal liability can, under limited circumstances, be based upon a failure to properly train the municipality's employees. *Connick*, 563 U.S. at 51. However, municipal liability is most tenuous when a claim turns on the failure to train. *Id.* (citing *Oklahoma City v. Tuttle*, 471 U.S. 808, 822-23 (1985) (plurality opinion) ("[A] 'policy' of 'inadequate training'" is "far more nebulous, and a good deal further removed from the constitutional violation, than was the policy in Monell")). To satisfy the statute, a municipality's failure to train its employees must amount to "'deliberate indifference to the rights of persons with whom the [untrained employees] come into contact.'" *Id.* (citing *City of Canton, Ohio v. Harris*, 489 U.S. 378, 388 (1989)).

There is no basis for municipal liability alleged in the Complaint. Plaintiff essentially that Defendants (1) use a homeless shelter that has poor health and safety conditions, (2) disbursed his SNAP benefits in incorrect amounts, and (3) over payment[5] of a debt that Plaintiff agreed to. (*See generally* Dkt. No. 1.) Plaintiff does not allege that he has been required to use

---

[5]    The Complaint alleges that on October 13, 2020, Defendants were re-paid $7,830.00, which Plaintiff agreed to. (Dkt. No. 1 at 3.) The Complaint further alleges that Defendants were paid $7,090.00, which was an "overpayment." (*Id.*) These allegations are far from clear and the Court takes judicial notice of the fact that $7,090.00 is, in fact, less than $7,830.00, which Plaintiff acknowledges that he agreed—in writing—to paying.

the homeless shelter and instead alleges that he has been "sent" to Riverside Motel.  (Dkt. No. 1 at 3.)  In New York State, the Office of Temporary and Disability Assistance oversees the local administration of the SNAP program; as set forth above in Part IV.A.1. of this Order and Report-Recommendation, that agency is an arm of the state and thus, entitled to immunity pursuant to the Eleventh Amendment.  Further, Plaintiff fails to allege which, of any, of Defendants were involved in the alleged overpayment of his debt.  (*See generally* Dkt. No. 1.)

There is no indication that Plaintiff can assert a policy or custom which would support municipal liability based on these facts.  In addition, none of Plaintiff's allegations reflect a failure to train or "deliberate indifference" to the rights of persons who would come into contact with Defendants.

As a result, I recommend that Plaintiff's claims against Defendant Schoharie County be dismissed at this time. *See Flagg v. NYS Division of Parole*, 19-CV-0886, 2019 WL 5002215, at *5 (N.D.N.Y. Aug. 15, 2019) (Baxter, M.J.) (citing *DeCarlo v. Fry*, 141 F.3d 56, 61 (2d Cir. 1998)) ("A single incident, particularly if it involved individuals below the policy-making level is insufficient to state a *Monell* claim."), *report and recommendation adopted by*, 2019 WL 4963112 (N.D.N.Y. Oct. 8, 2019) (McAvoy, J.).

Further, to the extent that Plaintiff asserts claims against Defendants Becker, Sammon, Russel, and Brandt in their official capacities pursuant to 42 U.S.C. § 1983, as employees of Schoharie County Department of Social Services—or some other municipal entity—I recommend that those claims be dismissed.  "Claims against a government employee in his official capacity [is] treated as a claim against the municipality."  *Malay v. City of Syracuse*, 638 F. Supp. 2d 203, 311 (N.D.N.Y. 2009) (McCurn, J.).  For the reasons stated above, Plaintiff has failed to allege facts plausibly suggest a cause of action against Defendant Schoharie County (or

14

any other municipal entity).  As a result, the claims against Defendants Becker, Sammon, Russel, and Brandt in their official capacities pursuant to 42 U.S.C. § 1983, should be dismissed for failure to state a claim upon which relief may be granted.

**B.      Claims Pursuant to the ADA**

Plaintiff refers to the ADA as a basis for recovery.  (Dkt. No. 1.)  To the extent that Plaintiff intended to assert claims pursuant to the ADA, I recommend that those claims be dismissed for failure to state a claim upon which relief may be granted.

Although the Complaint is sparse and largely incomprehensible, it states that Plaintiff has diabetes and undergone a "coronary angiograph" which left him with four stents.  (*Id*. at 3.)  The Complaint provides no allegations of discrimination based on his disability.  (*See generally* Dkt. 1.)  However, construing the Complaint liberally, as the Court must, Plaintiff failed to allege facts plausibly suggesting claims pursuant to Title II or Title III of the ADA.[6]

---

[6]      Based on the facts alleged, Plaintiff could not proceed with a claim under Title I of the ADA, which addresses employment discrimination, because he has neither alleged that he was employed by Defendants, nor alleged that he exhausted administrative remedies by filing a charge with the Equal Employment Opportunity Commission before pursuing litigation in federal court.  42 U.S.C. § 12117; *see Mary Jo C. v. New York State Local Retirement Sys.*, 707 F.3d 144, 169 (2d Cir. 2013) (quoting *Bd. of Trustees of Univ. of Alabama v. Garrett*, 531 U.S. 356, 360, n.1 (2001)) ("'Title I of the ADA expressly deals with th[e] subject' of employment discrimination.").  Moreover, Title IV of the ADA does not appear to be applicable to Plaintiff's claims because Title IV prohibits disability discrimination in telecommunications.  *Genco v. Sargent & Collins LLP*, 18-CV-0107, 2018 WL 3827742, at *3, n.5 (W.D.N.Y. June 4, 2018). Finally, Title V of the ADA, sometimes referred to as the "retaliation provision," also does not appear applicable because Plaintiff does not allege that he engaged in activity protected by the ADA, that Defendants were aware of that activity, or any causal connection between the allegedly adverse actions that Defendant took against him and the protected activity.  *Chiesa v. New York State Dep't of Labor*, 638 F. Supp. 2d 316, 323 (N.D.N.Y. 2009) (Hurd, J.); *see also Constantine v. Merola*, 2020 WL 8450544, at *5 (N.D.N.Y. Nov. 6, 2020) (Lovric, M.J.) (recommending dismissal of the plaintiff's ADA Title V claims where the complaint failed to allege that the plaintiff "engaged in any protected activity, that any [d]efendant knew that [p]laintiff was involved in the protected activity, or that any adverse decision or course of action taken by [d]efendants was causally connected to that protected activity."), *report and recommendation adopted by* 2021 WL 392487 (N.D.N.Y. Feb. 4, 2021) (Hurd, J.).

## 1.   Title II of the ADA

Title II of the ADA "proscribes discrimination against the disabled in access to public services." *Harris v. Mills,* 572 F.3d 66, 73 (2d Cir. 2009) (citing *Powell v. Nat'l Bd. of Med. Exam'rs,* 364 F.3d 79, 84-85 (2d Cir. 2004), *corrected,* 511 F.3d 238 (2d Cir. 2004)).   The ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132.  To plead a violation of Title II of the ADA, a plaintiff must allege "(1) that [he] is a qualified individual with a disability; (2) that [he] was excluded from participation in a public entity's services, programs, or activities or was otherwise discriminated against by a public entity; and (3) that such exclusion or discrimination was due to [his] disability." *Fulton v. Goord,* 591 F.3d 37, 43 (2d Cir. 2009) (quoting *Hargrave v. Vermont,* 340 F.3d 27, 34-35 (2d Cir. 2003)) (internal quotation marks omitted).  A "qualified individual" is

> an individual with a disability who, with or without reasonable modifications to rules, policies, or practices, the removal of architectural, communication, or transportation barriers, or the provision of auxiliary aids and services, meets the essential eligibility requirements for the

---

The Court also notes that, "[i]t is firmly established that Titles I and V of the ADA do not abrogate states' sovereign immunity." *Penird v. Better,* 19-CV-1146, 2021 WL 3077853, at *4 (N.D.N.Y. July 21, 2021) (D'Agostino, J.) (citing *Rosenfield v. New York State Div. of Veterans' Affairs*, 18-CV-1299, 2019 WL 4621962, at *8 (N.D.N.Y. Sept. 24, 2019) (Suddaby, C.J.); *Quadir v. New York State Dep't of Labor*, 39 F. Supp. 3d 528, 536 (S.D.N.Y. 2014)).  "Further, New York State has not waived its sovereign immunity under Titles I or V of the ADA." *Penird,* 2021 WL 3077853, at *4 (citing *Quadir,* 39 F. Supp. 3d at 537).  As a result, in the alternative, I recommend that, to the extent Plaintiff asserted claims pursuant to Title I or V of the ADA against Defendant Office of Temporary and Disability Assistance and Cuomo in his official capacity, those claims be dismissed because those Defendants are immune from suit pursuant to the Eleventh Amendment.

receipt of services or the participation in programs or activities provided
by a public entity.

42 U.S.C. § 12131(2).  A qualified individual can base a discrimination claim on any of "three

available theories: (1) intentional discrimination (disparate treatment); (2) disparate impact; and

(3) failure to make a reasonable accommodation."  *Tsombanidis v. West Haven Fire Dep't*, 352

F.3d 565, 573 (2d Cir. 2003).

Here, the Compliant is devoid of factual allegations plausibly suggesting that Plaintiff

was unable to access programs due to his disability, how his disability prevented him from

accessing those programs, or what accommodations he sought and was denied by Defendants.

(*See generally* Dkt. 1.)

Moreover, "[w]hen a private individual seeks damages under Title II of the ADA, the

Second Circuit requires the plaintiff to 'establish that the Title II violation was motivated by

either discriminatory animus or ill will due to disability.'"  *Day v. Warren*, 06-CV-0155, 2008

WL 474261, at *4 (D. Conn. Feb. 7, 2008) (quoting *Garcia v. S.U.N.Y. Health Scis. Ctr. of

Brooklyn*, 280 F.3d 98, 111 (2d Cir. 2001)).  The Complaint fails to allege facts plausibly

suggesting discriminatory animus or ill will towards Plaintiff's alleged disability or disabilities.

(*See generally* Dkt. No. 1.)

As a result, I recommend that Plaintiff's ADA claims under Title II be dismissed

pursuant to 28 U.S.C. § 1915(e)(2)(B) for failure to state a claim upon which relief may be

granted.  *See Hill v. LaClair*, 20-CV-0441, 2020 WL 2404771, at *8 (N.D.N.Y. May 11, 2020)

(Hurd, J.) (dismissing ADA Title II claims "pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C.

§ 1915A(b) for failure to state a claim upon which relief may be granted.").[7]

---

[7]      In the alternative, to the extent that Plaintiff attempts to assert ADA Title II claims
against Defendants Becker, Sammon, Goodearu, Russel, Bradt, and Cuomo in their individual

## 2.  Title III of the ADA

Title III of the ADA prevents discrimination based on a disability in places of public accommodation.  42 U.S.C. § 12182.  However, Title III "expressly does not apply to public entities, including local governments."  *Bloom v. Bexar Cnty.*, 130 F.3d 722, 726 (5th Cir. 1997); *see Morales v. New York*, 22 F. Supp. 3d 256, 266-67 (S.D.N.Y. 2014) ("Title III is not applicable to public entities.").  Instead, "[a] claim under Title III of the [ADA] can only be asserted against a private entity engaged in the provision of public accommodations, such as an inn, hotel or private school."  *Morales*, 22 F. Supp. 3d at 266 (citing 42 U.S.C. §§ 12181(7); 12182); *see also Booker v. City of New York*, 17-CV-7035, 2018 WL 4616048, at *5, n.3 (S.D.N.Y. Sept. 26, 2018) (holding that a claim pursuant to Title III of the ADA cannot be asserted against the City of New York or its employees in their official capacities because they are not private entities engaged in the provision of public accommodations).

Here, Defendants Schoharie County Department of Social Service and Office of Temporary and Disability Assistance are public entities, which are thus, not amenable to a Title III ADA claim.  *See Maioriello v. New York State Office for People with Dev. Disabilities*, 14-CV-0214, 2015 WL 5749879, at *16 (N.D.N.Y. Sept. 30, 2015) (Suddaby, C.J.) (dismissing the

---

capacities, I recommend that those claims be dismissed because "individuals cannot be held liable under the ADA."  *Netti v. Ayers*, 17-CV-0976, 2017 WL 7542494, at *18 (N.D.N.Y. Oct. 5, 2017) (Baxter, M.J.) (citing *Baross v. Greenlawn*, 16-CV-4805, 2017 WL 2124424, at *4 (E.D.N.Y. May 15, 2017)), *report and recommendation adopted by* 2018 WL 813509 (N.D.N.Y. Feb. 9, 2018) (Suddaby, C.J.); *accord Rosenfield v. New York State Div. of Veterans' Affairs*, 18-CV-1299, 2019 WL 4621962, at *10 (N.D.N.Y. Sept. 24, 2019) (Suddaby, C.J.); *see Garcia v. S.U.N.Y. Health Scis. Ctr. of Brooklyn*, 280 F.3d 98, 107 (2d Cir. 2001) (holding that Title II of the ADA does not provide for suits against individuals); *Fox v. State Univ. of N.Y.*, 497 F. Supp. 2d 446, 449 (E.D.N.Y. 2007) ("[T]here is no individual liability under Title I or Title II of the ADA, or the ADEA."); *Sutherland v. New York State Dep't of Law*, 96-CV-6935, 1999 WL 314186, at *7 (S.D.N.Y. May 19, 1999) ("Individual defendants may not be held personally liable for alleged violations of the ADA.").

plaintiff's claims to the extent that they were based on a violation of Title III because the New

York State Office for People with Developmental Disabilities is a public entity).[8]

Further, to the extent that Plaintiff intended to assert a Title III claim against Defendants

Becker, Sammon, Goodearu, Russel, Bradt, and Cuomo in their individual capacities, Title III

provides a private right of action for injunctive relief but no right of action for monetary relief.

42 U.S.C. § 12188; *see Krist v. Kolombos Rest. Inc.*, 688 F.3d 89, 94 (2d Cir. 2012) (holding that

Title III of the ADA "authorizes private actions only for injunctive relief, not monetary

damages."); *Powell*, 364 F.3d at 86 ("Monetary relief . . . is not available to private individuals

under Title III of the ADA."); *see also Ervine v. Deser View Reg'l Med. Ctr. Holdings, LLC*, 753

F.3d 862, 867 (9th Cir. 2014) ("Damages are not an available remedy to individuals under Title

III of the ADA; individuals may receive only injunctive relief.").  As a result, those claims

should also be dismissed because Plaintiff seeks solely monetary damages.

In addition, "Title[ ] . . . III of the ADA prohibit[s] discrimination against qualified

disabled individuals by requiring that they receive 'reasonable accommodations' that permit

them to have access to and take a meaningful part in public services and public

---

[8]     To the extent that Plaintiff intended to assert Title III claims against Defendants Becker, Sammon, Goodearu, Russel, Bradt, and Cuomo in their official capacities as government employees, I recommend that those claims be dismissed.  As an initial matter, as set forth above in Part IV.A.2. of this Order and Report-Recommendation, the Complaint fails to allege facts plausibly suggesting the position, if any, that Defendant Goodearu holds. To the extent that Defendant Goodearu holds a position with a private entity, the Complaint fails to allege facts plausibly suggesting that the private entity is engaged in the provision of public accommodations.  (*See generally* Dkt. No. 1.)  Moreover, to the extent that Defendants Becker, Sammon, Goodearu, Russel, Bradt, and Cuomo are government employees, a claim against them in their official capacities pursuant to Title III of the ADA would be treated as a claim against the municipality or government agency, which cannot be sustained.  *See Malay v. City of Syracuse*, 638 F. Supp. 2d 203, 311 (N.D.N.Y. 2009) (McCurn, J.) (dismissing as duplicative claims against defendants in their "official capacity" because "claims against a government employee in his official capacity are treated as a claim against the municipality.")

accommodations." *Powell*, 364 F.3d at 85, opinion corrected, 511 F.3d 238 (2d Cir. 2004)

(citations omitted).  To adequately plead a claim pursuant to Title III of the ADA for failure to

provide reasonable accommodations, a plaintiff must allege facts establishing that the

defendant's "failure to make 'reasonable modifications' to their policies, practices, and

procedures deprived plaintiff of the ability to access the 'goods, services, facilities, privileges,

advantages, or accommodations' available to those lacking [the] plaintiff's disabilities."

*Andersen v. N. Shore Long Island Jewish Healthcare Sys. Zucker Hillside Hosp.*, 12-CV-1049,

2013 WL 784391, at *9 (E.D.N.Y. Jan. 23, 2013) (quoting 42 U.S.C. 12182(b)(2)(A)(i)-(ii)

(additional citation omitted)), *report and recommendation adopted* as modified, 2013 WL

784344 (E.D.N.Y. Mar. 1, 2013).

      Here, the Complaint is devoid of factual allegations concerning "policies, practices, [or]

procedures" by Defendants that deprived Plaintiff of ability to access goods, services, or

privileges available to those without Plaintiff's disabilities.  *Doe v. NYSARC Tr. Serv., Inc.*, 20-

CV-0801, 2020 WL 5757478, at *8 (N.D.N.Y. Sept. 28, 2020) (Hummel, M.J.), *report and

recommendation adopted by*, 2020 WL 7040982 (N.D.N.Y. Dec. 1, 2020) (Sannes, J.).

      As a result, I recommend that, to the extent that Plaintiff intended to assert claims

pursuant to Title III of the ADA, those claims be dismissed for failure to state a claim upon

which relief may be granted.

      **C.**    **New York State Common Law Negligence Claim**

      In the event that Plaintiff's federal claims—to the extent that he alleged any—are

dismissed, I recommend that the Court decline to exercise supplemental jurisdiction over any

state law claims.  *Kolari v. New York-Presbyterian Hosp.*, 455 F.3d 118, 122 (2d Cir. 2006)

("[A] district court may decline to exercise supplemental jurisdiction if it has dismissed all claims over which it has original jurisdiction.").

In the alternative, I recommend that Plaintiff's negligence claim be dismissed for failure to state a claim.  "In order to prevail on a negligence claim, 'a plaintiff must demonstrate (1) a duty owed by the defendant to the plaintiff, (2) a breach thereof, and (3) injury proximately resulting therefrom.'"  *Pasternack v. Lab. Corp. of Am. Holdings*, 27 N.Y.3d 817, 825 (N.Y. 2016) (quoting *Soloman v. City of New York*, 66 N.Y.2d 1026, 1027 (N.Y. 1985)).

The Complaint fails to allege facts plausibly suggesting that Defendants owed a duty to Plaintiff, a breach of that duty, or an injury resulting from that breach.  (*See generally* Dkt. No. 1.)  As a result, in the alternative, I recommend that Plaintiff's negligence claim be dismissed for failure to state a claim upon which relief may be granted.

## V.    OPPORTUNITY TO AMEND

Generally, a court should not dismiss claims contained in a complaint filed by a *pro se* litigant without granting leave to amend at least once "when a liberal reading of the complaint gives any indication that a valid claim might be stated."  *Branum v. Clark*, 927 F.2d 698, 704-05 (2d Cir. 1991); *see also* Fed. R. Civ. P. 15(a)(2) ("The court should freely give leave when justice so requires.").  An opportunity to amend is not required, however, where "the problem with [the plaintiff's] causes of action is substantive" such that "better pleading will not cure it." *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000); *see also Cortec Indus. Inc. v. Sum Holding L.P.*, 949 F.2d 42, 48 (2d Cir. 1991) ("Of course, where a plaintiff is unable to allege any fact sufficient to support its claim, a complaint should be dismissed with prejudice.").  Stated differently, "[w]here it appears that granting leave to amend is unlikely to be productive, . . . it is not an abuse of discretion to deny leave to amend."  *Ruffolo v. Oppenheimer & Co.*, 987 F.2d

129, 131 (2d Cir. 1993); *accord, Brown v. Peters*, 95-CV-1641, 1997 WL 599355, at *1 (N.D.N.Y. Sept. 22, 1997) (Pooler, J.).[9]

 With respect to Plaintiff's claims pursuant to 42 U.S.C. § 1983, I recommend that the claims against Defendants Office of Temporary and Disability Assistance and Cuomo in his official capacity, be dismissed with prejudice and without leave to amend because they are immune from suit. *See Forjone*, 414 F. Supp. 3d at 303-04 (dismissing with prejudice the plaintiff's claims against the state and federal defendants based on the doctrine of sovereign immunity because "[p]ermitting amendment would be unproductive in this instance.").

 However, I am unable to conclude with complete certainty that if permitted leave to amend his Complaint, Plaintiff could not assert a plausible claims pursuant (1) 42 U.S.C. § 1983 against Defendants Schoharie County, Becker, Sammon, Goodearu, Russel, and Brandt, (2) 42 U.S.C. § 1983 against Defendant Cuomo in his individual capacity, (3) the ADA, and (4) New York state common law negligence. Accordingly, I recommend that leave to amend be granted with respect to those claims.

 If Plaintiff chooses to file an amended complaint, he should note that the law in this circuit clearly provides that "'complaints relying on the civil rights statutes are insufficient unless they contain some specific allegations of fact indicating a deprivation of rights, instead of a litany of general conclusions that shock but have no meaning.'" *Hunt v. Budd*, 895 F. Supp. 35, 38 (N.D.N.Y. 1995) (McAvoy, J.) (quoting *Barr v. Abrams*, 810 F.2d 358, 363 (2d Cir.

---

[9] *See also Carris v. First Student, Inc.*, 132 F. Supp. 3d 321, 340-41 n.1 (N.D.N.Y. 2015) (Suddaby, C.J.) (explaining that the standard set forth in *Gomez v. USAA Fed. Sav. Bank*, 171 F.3d 794, 796 (2d Cir. 1999)—that the Court should grant leave to amend "unless the court can rule out any possibility, however unlikely it might be, that an amended complaint would be successful in stating a claim"—is likely not an accurate recitation of the governing law after *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007)), *rev'd on other grounds*, 682 F. App'x 30.

1987)); *accord Pourzancvakil v. Humphry*, 94-CV-1594, 1995 WL 316935, at *7 (N.D.N.Y.

May 22, 1995) (Pooler, J.).  Therefore, in any amended complaint, Plaintiff must clearly set forth

facts that give rise to the claims, including the dates, times, and places of the alleged underlying

acts, and each individual who committed each alleged wrongful act.  In addition, the revised

pleading should allege facts demonstrating the specific involvement of any named Defendant in

the constitutional deprivations alleged in sufficient detail to establish that it was tangibly

connected to those deprivations.  *Bass v. Jackson*, 790 F.2d 260, 263 (2d Cir. 1986).  Finally,

Plaintiff is informed that any such amended complaint will replace the existing Complaint and

must be a wholly integrated and complete pleading that does not rely upon or incorporate by

reference any pleading or document previously filed with the Court.  *See Shields v. Citytrust*

*Bancorp, Inc.*, 25 F.3d 1124, 1128 (2d Cir. 1994) ("It is well established that an amended

complaint ordinarily supersedes the original and renders it of no legal effect.").

       **ACCORDINGLY**, it is

       **ORDERED** that Plaintiff's application to proceed *in forma pauperis* (Dkt. No. 3) is

**GRANTED**; and it is further respectfully

       **RECOMMENDED** that the Court **DISMISS WITH LEAVE TO REPLEAD**

Plaintiff's claims pursuant to (1) 42 U.S.C. § 1983 against Defendants Schoharie County,

Becker, Sammon, Goodearu, Russel, and Brandt, (2) 42 U.S.C. § 1983 against Defendant Cuomo

in his individual capacity, (3) the ADA,  and (4) New York state common law negligence, for

failure to state a claim upon which relief may be granted pursuant to 28 U.S.C. § 1915(e)(2)(B);

and it is further respectfully

       **RECOMMENDED** that the Court **DISMISS WITHOUT LEAVE TO REPLEAD**

Plaintiff's claims pursuant to 42 U.S.C. § 1983 against Defendants Office of Temporary and

Disability Assistance and Cuomo in his official capacity, because those claims seek monetary relief against Defendants who are immune from such relief pursuant to 28 U.S.C. § 1915(e)(2)(B); and it is further respectfully

**ORDERED** that the Clerk of the Court shall file a copy of this Order and Report-Recommendation on Plaintiff, along with copies of the unpublished decisions cited herein in accordance with the Second Circuit's decision in *Lebron v. Sanders*, 557 F.3d 76 (2d Cir. 2009) (per curiam).

**NOTICE:** Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen days within which to file written objections to the foregoing report.[10]  Such objections shall be filed with the Clerk of the Court.  **<u>FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW</u>**.  28 U.S.C. § 636(b)(1) (Supp. 2013); Fed. R. Civ. P. 6(a), 6(d), 72; *Roldan v. Racette*, 984 F.2d 85 (2d Cir. 1993) (citing *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15 (2d Cir. 1989)).


Dated: December  21 , 2021
       Binghamton, New York

Miroslav Lovric
U.S. Magistrate Judge

---

[10]     If you are proceeding *pro se* and served with this report, recommendation, and order by mail, three additional days will be added to the fourteen-day period, meaning that you have seventeen days from the date that the report, recommendation, and order was mailed to you to serve and file objections.  Fed. R. Civ. P. 6(d).  If the last day of that prescribed period falls on a Saturday, Sunday, or legal holiday, then the deadline is extended until the end of the next day that is not a Saturday, Sunday, or legal holiday.  Fed. R. Civ. P. 6(a)(1)(C).